

# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us     My Account     

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

Not all search results will be displayed on-line. For example, the following case types (Sealed, Juvenile, Adoption and Mental Health Cases) may or may not be in existence and may or may not be viewable by the public pursuant to Florida Supreme Court Mandate and the corresponding Access Security Matrix.

### RAZ OFER ET AL VS MIAMI DADE PROPERTY APPRAISERS OFFICE ET AL

| | | | |
|---|---|---|---|
| Local Case Number: | 2021-025489-CA-01 | Filing Date: | 11/18/2021 |
| State Case Number: | 132021CA025489000001 | Judicial Section: | CA15 |
| Consolidated Case No.: | N/A | Case Type: | Other Civil Complaint |
| Case Status: | OPEN | | |

👥 Parties                                         Total Of Parties: 8  ➕

⚒ Hearing Details                                  Total Of Hearings: 0  ➕

🔊 Dockets                                          Total Of Dockets: 3  ➖

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 3 | 11/19/2021 | | Receipt: | Event | RECEIPT#:2970150 AMT PAID:$403.50 NAME:DAVID J WINKER 4720 S. LE JUNE ROAD CORAL GABLES FL 33146 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3102-MULTIPLE DEFENDANT 1 $2.50 $2.50 TENDER TYPE:E-FILING ACH TENDER AMT:$403.50 RECEIPT DATE:11/19/2021 REGISTER#:297 CASHIER:EFILINGUSER |
| 📄 | 2 | 11/18/2021 | | Complaint | Event | |
| 📄 | 1 | 11/18/2021 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer



Filing # 138823265 E-Filed 11/18/2021 03:17:30 PM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.      CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Raz Ofer, DRO 15R, LLC</u>
Plaintiff                                                    Case # _____
                                                             Judge  _____

vs.
<u>MIAMI DADE PROPERTY APPRAISERS OFFICE, pedro garcia, lazor solis, Matthewq
Albrecht, Roniel Rodriguez, Stuart Kalb</u>
  Defendant

**II.      AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.      TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☒ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   3

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ David J Winker          Fla. Bar # 73148
        Attorney or party                (Bar # if attorney)

David J Winker                  11/18/2021
(type or print name)            Date

Filing # 138823265 E-Filed 11/18/2021 03:17:30 PM

IN THE ELEVENTH CIRCUIT
COURT OF THE ELEVENTH
JUDICIAL DISTRICT IN AND
FOR MIAMI DADE COUNTY, FL.

GENERAL JURISDICTION DIV.

DRO 15R, LLC, and
RAZIEL OFFER,
     Plaintiffs,

v.                                CASE NO.:

MIAMI DADE PROPERTY APPRAISER'S OFFICE,
PROPERTY APPRAISER PEDRO J. GARCIA,
DEPUTY PROPERTY APPRAISER LAZARO SOLIS,
STAFF ATTORNEY MATTHEW ALBRECHT, ESQ.,
RONIEL RODRIGUEZ, ESQ., and
STUART KALB.
     Defendants.

_____/

**COMPLAINT**

David J. Winker, Esq., B.C.S
Fla. Bar. No. 73148
David J. Winker, PA
4720 S. Le Jeune Rd
Coral Gables, Fl 33146
305-801-8700
dwinker@dwrlc.com

COMES NOW Plaintiffs DRO 15R, LLC ("DRO") and RAZIEL OFER ("OFER"), by and through the undersigned counsel, to sue Defendants MIAMI DADE PROPERTY APPRAISER'S OFFICE, an instrumentality of MIAMI DADE COUNTY, FLORIDA ("MDPAO"), PROPERTY APPRAISER PEDRO J. GARCIA in his official capacity ("GARCIA"), DEPUTY PROPERTY APPRAISER LAZARO SOLIS in his official capacity ("SOLIS"), STAFF ATTORNEY MATTHEW ALBRECHT, ESQ in his official capacity ("ALBRECHT"), RONIEL RODRIGUEZ, ESQ. ("RODRIGUEZ"), and STUART KALB ("KALB"), and in support thereof Plaintiffs state the following:

1. This case involves a fraudulent quit claim filed by RODRIGUEZ that was accepted by the MIAMI DADE PROPERTY APPRAISER'S OFFICE after it was lobbied by RODRIGUEZ to disallow Plaintiff's previously filed deed.

2. Property rights are fundamental to ordered liberty under the United States and Florida Constitutions. As the Supreme Court recently stated: "[T]he protection of property rights is necessary to preserve freedom and empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." *Cedar Point v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (citations and quotations omitted). There is no doubt: "[p]roperty must be secure, or liberty cannot exist." Id.

3. The prototype of these protections is to guard against arbitrary and capricious use of government power to take away rights.

4. MDPAO by its after-the-fact disallowance of Plaintiffs' deed after lobbying by third parties as outlined herein has violated OFER's rights.

Therefore, Plaintiffs seek damages and equitable relief pursuant to 42 U.S.C.§ 1983 and under the Federal and Florida Constitutions against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of their fundamental rights, by: (1) violating Plaintiffs' substantive and procedural due process rights through the deprivation of Plaintiffs' property rights as secured by the Fourteenth Amendment to the United States Constitution and the Florida Constitution; and (2) depriving Plaintiffs equal protection under the law by intentionally treating Plaintiffs differently from others similarly situated (and having no rational basis for the disparate treatment).

## PARTIES

5. Plaintiff OFER is an individual who resides in this county, is sui juris and conducts business herein.

6. Plaintiff DRO is a Florida limited liability company, has its place of business located within this county and conducts business herein.

7. Defendant MDPAO, an instrumentality of the County of Miami Dade, a body politic, is an agency or instrumentality thereof charged with certain functions of oversight, property records and valuation, is situated within the county and conducts its business herein.

8. Defendant GARCIA is the Director of MDPAO and an employee of Miami Dade County, is sui juris and performs his official duties within this county.

9. Defendant SOLIS is the Director of MDPAO and an employee of Miami Dade County, is sui juris and performs his official duties within this county.

10. Defendant ALBRECHT, a licensed member of the Florida Bar, an employee of MDPAO and Miami Dade County, is sui juris and performs his official duties within this county.

11. Defendant RODRIGUEZ, a licensed member of the Florida Bar, is sui juris and resides in Miami-Dade County.

12. Defendant KALB is sui juris and resides in Miami-Dade County.

## JURISDICTION AND VENUE

13. This is an action for damages in excess of $30,000.00 and this Court maintains jurisdiction pursuant to Fla. Stat. §26.012. The transaction, occurrence and/or event took place within the jurisdiction of this Court. Venue is proper as the real property in question is located within this county and jurisdiction of this court.

## ALLEGATIONS OF MATERIAL FACT

14. DRO acquired title to the property located at 1560 Drexel Avenue and 1568 Drexel Avenue, both located in Miami Beach, Florida ("Property") on or about Nov. 16, 2020, via quit claim deed from 1560/1568 Drexel Avenue, LLC ("Drexel") to DRO ("the DRO Deed"). *See Quit Claim Deed attached as exhibit "A"*[1].

15. OFER is the Managing Member of DRO and has the responsibility of day-to-day management and oversight of the Property.

---

[1] It is important to note that the two structures are situated on a parcel that is identified by one folio identification number for the purposes of the Property Appraiser.

16. OFER was a Managing Member of Drexel at the time of the creation of DRO Deed and had the authority to execute the deed.

17. MDPAO received the recording of the DRO Deed and, according to their protocol, did effect a change to the records of the MDPAO property records to reflect that DRO was, in fact, the new owner of record for the Property.

18. The personnel of MDPAO responsible for the review of documentation prior to any action to change the record performed a review of the DRO Deed and did not send any communications to DRO or OFER indicating any issues or deficiencies in the DRO Deed and effected the change of record.

19. Subsequently, on or about June 6, 2021, MDPAO received a competing quit claim deed which purported to convey the title to the Property from Drexel to Ajar Holdings, LLC ("Ajar") which was dated March 24, 2021 and recorded on March 30, 2021 ("Ajar Deed"). *See Ajar Deed attached as exhibit "B".*

20. Upon review by the MDPAO, that office discovered what they classified as a discrepancy in the title, questioning the validity of the Ajar Deed because it conflicted with the previously submitted DRO Deed.

21. A notice was issued to Ajar and its Authorized Representative, Roniel Rodriguez, Esq. describing that there was a title issue as to the chain of title which affected the deed issued to Ajar[2]. *See MDPAO Notice attached as exhibit "C".*

22. MDPAO issued said notice to Ajar and Rodriguez on or about June 9, 2021. Again, no correspondence or any other writing was issued to DRO or OFER to give any notice of any recording which contradicted the DRO Deed or his title

---

[2] It is important to note that the MDPAO mentioned in its correspondence of June 9, 2021, that there was a discrepancy in the chain of title which reflected that the record showed DRO as the owner of record at the time the Ajar Deed went under review with MDPAO.

ownership in the record, much less any notice in which DRO or OFER could have challenged the change and preserved its claim as owner prior to the MDPAO making the change in owner of record.

23. Subsequently, it was discovered that a self-proclaimed property manager of Ajar became present at the property distributing several notices directing tenants to send rental installment payments to Ajar at the designated location on the notice, improperly attempting to divert the installment payments.

24. It is material that attached to the notice was a copy of the MDPAO property record which reflected Ajar as the title holder of record.

25. It is material that at no time prior to the attempted diversion of the rental installment payments from the tenants to Ajar, DRO and OFER had no knowledge that the records of the MDPAO had been changed to reflect Ajar as the owner of record.

26. Upon notification to OFER by one of the tenants, OFER and his personnel went to the Property and was confronted by the Ajar representative which ultimately resulted in law enforcement being called to the Property location.

27. Upon arrival, law enforcement noticed the parties and instructed Ajar's representative to leave the Property and not return to the Property, advising to resort to judicial adjudication for resolution to the issue before the Circuit Court and that if a representative of Ajar was found again at the property they would be arrested for trespass.

28. OFER reached out to DRO's then counsel to make an inquiry into the issue with the MDPAO as to why the record was changed and to inquire as to why he nor DRO received any notice of the change.

29. Prior counsel instructed his office to carry out the request and the inquiry was made into the reasoning and basis for the name change to the MDPAO on or about June 22, 2021.

30. MDPAO personnel responded the change to Ajar as title holder to the Property was made upon receipt of the Ajar Deed and, after a review of the record by MDPAO, it was discovered that the DRO Deed contained a purported error which MDPAO believed rendered the DRO Deed defective.

31. It is material that Rodriguez instructed the MDPAO on the purported defect and caused the MDPAO to change its opinion from a mere scrivener's error to a substitution of party defect.

32. Upon escalation by the office of prior counsel, the matter was forwarded to MDPAO legal department and discussions began in earnest as to the correction of the issue with Matthew Albrecht, Esq., Senior Staff Attorney for MDPAO ("Albrecht") on or about June 28, 2021.

33. In response to the escalated inquiry, Albrecht stated that the DRO Deed was recharacterized as a "type 98 deed" due to the "fact that the signature line on the face of the deed reflects that Mr. OFER signed on behalf of the grantee (as opposed to the grantor)". *See Email to Albrecht dated June 28, 2021 attached as exhibit "D".*

34. In opposition to that response, Albrecht was notified that the error was simply a scrivener's error once again, and the record should be reverted back to reflecting the title holder of record as DRO.

35. Albrecht responded in kind that the MDPAO originally processed the DRO Deed and, through apparent oversight, processed the DRO Deed and did not issue any defect letter when it originally reviewed the DRO Deed in 2020.

36. After further inquiry, Albrecht supplemented his response by stating "From what I gather, if a deed is coded "type 98" upon initial review, it will be put in a "problem queue" and a defect letter typically sent (note: there could be multiple reasons for why a deed is type 98). In situations like this one, where a decision to code a deed a "type 98" is made after the fact, then my understanding is that the *decision to send a defect letter is made on a case-by-case basis.*" *See Id. dated June 29, 2021.* [emphasis added].

37. As MDPAO has identified a specific procedure upon designation of a deed as defective and the issuance of a defect notice being the usual scenario, it would appear that a "after the fact" recategorization based upon lobbying by a third party whereby the defect notice is issued on a case-by-case basis is an arbitrary and capricious procedure where discretion exercised is not in a uniform and consistent manner and can result in prejudice to a property owner, as it did in the instant matter.

38. On or about June 30, 2021, OFER caused to be executed a Corrective Deed to change the alleged defects in the DRO Deed which, upon information and belief, said corrections would relate back to the filing of the original DRO Deed

eliminating any defects when the two deeds are read together ("Corrective Deed"). Such communication was made to Albrecht on or about July 4, 2021. *See Id. dated July 4, 2021.*

39. In his response, Albrecht stated that MDPOA would not recognize the Corrective Deed and would not change the MDPOA property records to reflect DRO as the title holder of record.

40. Further, Albrecht would not identify any personnel within the MDPAO who reviewed the DRO Deed in Nov. 2020 who should have issued a notice of any purported defect discovered at that time which would have allowed Plaintiff to avoid this particular conflict altogether.

41. ALBRECHT refused to allow OFER to speak with the MDPAO employee that approved the DRO Deed, or with anyone who deals with approving and recording deeds at MDPAO.

42. ALBRECHT confirmed to OFER and his counsel that RODRIGUEZ had contacted the property appraiser to discuss setting aside the DRO Deed but refused to say with whom he spoke.

43. All conditions precedent has been met by the Plaintiff or waived by the Defendant(s) for the institution of this action.

44. Miami-Dade County and its instrumentality, MDPAO is not subject to Chp. 120, Fla. Stat., Florida's Administrative Procedures Act, requiring review pursuant to Fla. R. App. P., See *Fla. Water Servs. Corp. v. Robinson*, 856 So. 2d 1035, 1038 (Fla. Dist. Ct. App. 2003) ("Nor do we find anything in the revisions of the

definition of "agency" to indicate the Legislature has changed the scope of the APA's applications to counties").

45. The office of the undersigned has been retained for the purpose of prosecution of this action and is entitled to reasonable fee for the provision of services to which the Plaintiffs is obligated to pay.

## DAMAGES

46. Plaintiffs have incurred millions in damages, and significant out of pocket expenditures, along with substantial lost time, stress and aggravation, on account of the Defendants improper practices and policies.

## COUNT I – NEGLIGENCE

47. Plaintiffs re-allege paragraphs 1 through 46 and incorporate them herein.

48. This is a cause of action for negligence.

49. MDPAO is a "County Property Appraiser" within the meaning of Fla. Stat. 192.001(3).

50. MDPAO owes a statutory duty to the public, including Plaintiff to prepare Real Property Assessment Rolls which include "the basis for qualification or disqualification of a transfer as an arms-length transaction". Fla. Stat. §193.114(1)(n).

51. Additionally, the MDPOA shall, "[i]f, subsequent to the initial decision qualifying or disqualifying a transfer of property, the property appraiser obtains information indicating that the initial decision should be changed, the property appraiser may change the qualification decision and, if so, must document the reason for the

change in a manner acceptable to the executive director or the executive director's designee." *Id.*

52. The Executive Director is the head of the Department of Revenue.

53. Albrecht is a Senior Level Employee in the capacity to make legal decisions within MDPAO and a member of the Florida Bar.

54. MDPOA has an indicated procedure that if there is a disqualification of a transfer of real property, that there shall be a notice issued to the issuer notifying them of the disqualification.

55. There was a breach of that duty, in that MDPOA failed to issue that notice pertaining to any defect and failed to identify the purported defect in the DRO Deed in a timely manner to allow a proper correction to be made.

56. Further, MDPOA failed to issue any notice to Plaintiff(s) upon the decision to change the original qualification decision, disqualifying it, depriving the Plaintiff(s) of property notice and due process.

57. Albrecht, recognizing the arbitrary discretion of MDPAO to issue the notices on a "case-by-case basis" failed to recognize the due process rights of Plaintiff's entitlement to notice and consider this in reverting the property records to reflect DRO as title holder of record.

58. MDPAO is the direct and proximate cause of the Plaintiff(s)' inability to properly and time make any necessary correction to the DRO Deed prior to any conflicting deeds being issued and recorded.

59. As a result, the competing Ajar Deed and Ajar has been able to utilize the oversight and gross and reckless negligence by MDPAO to disrupt possession of the Property and cause Plaintiff's damage.

WHEREFORE, Plaintiffs pray for relief that this Court adjudge the Defendants negligent, award damages, pre and post judgment interest, if any, costs and fees, including reasonable attorney's fees and any other relief this Court deems just and proper.

## COUNT II- PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983)

60. Plaintiffs incorporate each of the above factual allegations as if fully restated here.

61. The Fourteenth Amendment to the United States Constitution prohibits MDPAO from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits MDPAO from "depriv[ing a person] of life, liberty, or property, without due process of law."

62. Plaintiffs have a liberty and property interest in their private property and business operations.

63. As described herein, MDPAO deprived Plaintiffs of their liberty and property interests.

64. As described herein, MDPAO undertook those deprivations of those protected interests without affording Plaintiffs notice and an opportunity to be heard, both prior to and after the deprivations of those protected interests.

65. MDPAO did so by, among other things, failing to follow the procedures set forth in the Miami-Dade County Code.

66. MDPAO further did so by, among other things, failing to provide a constitutionally adequate process to remedy the deprivations.

67. MDPAO thereby deprived Plaintiffs of their constitutionally protected rights.

68. 177. Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

69. MDPAO acted herein under color of state law.

WHEREFORE, Plaintiffs demand judgment in their favor and against MDPAO:

a.   awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiffs' constitutional rights, as well as all pre- and post-judgment interest;

b.   entering a preliminary and permanent injunction compelling MDPAO to issue all entitlements to permit Plaintiffs to enjoy their constitutionally protected rights;

c.   entering a preliminary and permanent injunction preventing MDPAO from taking any action including in its governmental capacity to prevent Plaintiffs from enjoying their constitutionally protected rights; and

d.   granting any other such relief as the Court deems just and proper.

**COUNT III- EQUAL PROTECTION, CLASS OF ONE – 42 U.S.C. § 1983**

70. Plaintiffs incorporate each of the above factual allegations as if fully restated here.

71. The Fourteenth Amendment to the United States Constitution prohibits MDPAO from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

72. Plaintiffs have constitutionally protected rights to equal protection of and under the laws.

73. As described herein, MDPAO intentionally treated Plaintiffs differently from others identically situated. Specifically, MDPAO's regulatory conduct in respect of and treatment of Plaintiffs' property and businesses is different from, and intentionally discriminatory in comparison to, all other residents, who are prima facie identical to Plaintiffs in all relevant respects.

74. There is no rational basis for such difference in Plaintiffs' treatment by MDPAO.

75. All bases provided by MDPAO for its different treatment of Plaintiffs' are pretextual and thus inherently arbitrary and capricious.

76. MDPAO acted herein under color of state law.

WHEREFORE, Plaintiffs demand judgment in their favor and against MDPAO:

    a. awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the violation of Plaintiffs' constitutional rights, as well as all pre- and post-judgment interest;

b.  entering a preliminary and permanent injunction compelling MDPAO to issue all entitlements to permit Plaintiffs to enjoy their constitutionally protected rights;

c.  entering a preliminary and permanent injunction preventing MDPAO from taking any action including in its governmental capacity to prevent Plaintiffs from enjoying their constitutionally protected rights;

d.  granting any other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

_____/DJW/_____
David J. Winker, Esq., B.C.S
Fla. Bar. No. 73148
David J. Winker, PA
2222 SW 17th St
Miami, Fl 33145
305-801-8700
dwinker@dwrlc.com